Estate of Nettie Friedman, Deceased, Louis K. Friedman, Executor, Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Docket No. 9481.   Promulgated January 17, 1947.

*Louis Caplan, Esq.,* for the petitioner.
*Homer F. Benson, Esq.,* for the respondent.

OPINION.

HARRON, *Judge*: Respondent contends that the corpus of the trust is includible in the decedent's gross estate under the terms of section 811 (c) of the Internal Revenue Code.[1]

The only question for our determination is whether the corpus of the trust is includible in the decedent's gross estate as a transfer intended to take effect in possession or enjoyment at or after her death within the meaning of section 811 (c).

The trust agreement was irrevocable and the decedent retained no right to alter, amend, or modify the provisions thereof. The grantor of the trust made no provision for a reversion of the trust assets to herself or to her estate. She attached no strings to her gifts to the trustees. The grantor made transfers of property to trustees on April 19, 1930, which were not made in contemplation of death. The transfers of property were beyond recall by the decedent. Immediately prior to her death, the decedent had the right to receive the income of the trust, but that was her only interest in the trust corpus, and that interest was "obliterated" by her death. See *May* v. *Heiner*, 281 U. S. 238.

The trust here in question is the same, for practical purposes, as the trust in *May* v. *Heiner*, *supra*. The decedent made gifts *inter vivos* to trustees in trust. The gifts took the form of a life estate in the grantor, with the remainder over to others at and after the grantor's death. It was held in *May* v. *Heiner*, *supra*, that "At the death of Mrs. May no interest in the property held under the trust deed passed

---

[1] Respondent relies upon the following cases as in support of his contention: *Goldstone* v. *United States*, 325 U. S. 687; *Fidelity-Philadelphia Trust Co.* v. *Rothensies*, 324 U. S. 108; *Commissioner* v. *Estate of Field*, 324 U. S. 113; *Commissioner* v. *Estate of Girvin*, 155 Fed. (2d) 1; certiorari denied, 329 U. S. 725; *Commissioner* v. *Bayne's Estate*, 155 Fed. (2d) 475.

from her to the living; title thereto had been definitely fixed by the trust deed." The holding of the Supreme Court was founded upon its holding in *Reinecke* v. *Northern Trust Co.*, 278 U. S. 339. This Court has understood the holding in *May* v. *Heiner*, *supra*, to be that "nothing passes by reason of the death of the life tenant. Such event merely terminates the life estate." *Estate of Edward P. Hughes*, 7 T. C. 1348. And we have adhered to the view that such rule stands. *Estate of Edward P. Hughes*, *supra*. We have adhered to that view, with recognition that the decision in *Commissioner* v. *Bayne's Estate*, 155 Fed. (2d) 475, represents a different interpretation from our interpretation of *Helvering* v. *Hallock*, 309 U. S. 106, and of the subsequent cases of *Commissioner* v. *Field*, 324 U. S. 113, and *Fidelity-Philadelphia Trust Co.* v. *Rothensies*, 324 U. S. 108. See, also, *Estate of Joseph K. Cass*, 3 T. C. 562.

The donees of the decedent's gifts were her nephews and nieces; and the children thereof were made the beneficiaries of the share of a deceased nephew or niece. Respondent presents the argument in this case, which he has advanced in other cases, that, by the happening of the contingency that all of the nephews and nieces and all of the grand-nephews and grandnieces should predecease the decedent, the trust assets might return to the decedent or her estate by operation of law. In *Estate of Joseph K. Cass*, *supra*, we considered that argument [2] and concluded, "we do not think that the doctrine of the *Hallock* case applies where there has been no express retention by the grantor of any reversionary rights in the trust assets."

Respondent has treated the trust involved here as a "survivorship" trust, despite the fact that the trust instrument contains no provision whatsoever for return of the trust property to the grantor or to her estate in the event that she should survive the beneficiaries. This Court has endeavored to draw the line properly between "survivorship" trusts and those which can not be classed as such. It serves no purpose to repeat what we have said before, but in *Estate of Harris Fahnestock*, 4 T. C. 1096, 1102, we said "The *Hallock* case is a classic example of a transfer conditioned on survivorship." In *Estate of John C. Duncan*, 6 T. C. 84, 86, we recognized a survivorship trust by the grantor's retention of a reversionary interest; and in *National City Bank of New York, Trustee*, 7 T. C. 485, we found a survivorship trust. These cases were distinguished from *Francis Biddle Trust*, 3 T. C. 832.

---

[2] *Estate of Joseph K. Cass*, 3 T. C. 562, 564 and 565: "But this is a situation which is common to many trusts. See *Commissioner* v. *Kellogg*, 119 Fed. (2d) 54. Whenever a person makes a gift to a parent or to a son or daughter there is, of course, a possibility that by reason of the death of the donee the property may come back to the donor. Where, however, the gift is absolute its value is not to be included in the gross estate of the donor, provided it was not made in contemplation of death and that it took effect immediately. * * *"

In *Estate of Duncan* it was said that in the *Biddle* case, and others which followed it, "the grantor of the trust had done everything possible to cut all ties to a reversion of the property."

In this case, respondent's chief concern is with the wording of the trust which provides that the trustees are to distribute the trust to the nephews and nieces of the decedent who are living at the time of the grantor's death. We understand that such wording suggests, in the respondent's interpretation of the trust agreement, an element of "survivorship." To his argument we find answer in the wording of section 811 (c). See the concurring opinion of Judge Opper in *Frances Biddle Trust, supra.* We must look to the intention of the grantor of the trust, and the instrument of transfer must be examined to show such intent. In *Estate of Mary B. Hunnewell,* 4 T. C. 1128, 1131, we observed from the trust instrument an intent on the part of the grantor that irrevocable transfers should take effect immediately as a gift to a class of those of her grandchildren who would attain the age of 21. In the trust of this decedent, the trust instrument shows an intent of the grantor to make irrevocable transfers to the trustees to take effect immediately, upon the transfers of property to the trustees, as a gift to a class consisting of those of her nephews and nieces who should be alive at the time of her death, or who, if any should predecease her, should leave children surviving. Only the untimely death of all of the members of the class, the nephews and nieces, and of all of the grandnephews and grandnieces, could accomplish a failure of the trust. But the decedent, the grantor of the trust, had done all that she could do to make completed gifts at the time of her transfers of property to the trustees, and she attached no strings to the gifts. She made no provision for return of the gifts to herself or to her estate.

In addition to the test of intention, "the framework of extrinsic circumstances" furnishes guidance in this case. See *Frances Biddle Trust, supra,* concurring opinion. The decedent was 72 years of age when she created the trust in question. The nephews and nieces were of ages which were in the prime of life, ranging from 32 to 41 years; and the 5 grandnephews and grandnieces were of ages ranging from 1 to 6 years. All of the nephews and nieces, except one had children. The decedent had no children of her own. Under these circumstances, a reasonable view is that the decedent, the grantor, had no thought of making transfers of property *inter vivos* with the intention that the property could revert to herself or to her estate, or could take effect only at or after her death. And the circumstance that the decedent did not make any more explicit provision in the trust instrument to cover the remote contingency that all of the beneficiaries might pre-

decease her should be regarded as having little or no significance in this case because of the extrinsic circumstances, namely, her age and the respective ages on April 19, 1930, of her nephews and grand-nephews and nieces and grandnieces.

We do not have here a so-called "survivorship" trust. We conclude that the issue presented is governed by our decisions and the *rationale* in *Frances Biddle Trust, supra; Estate of Harris Fahnestock, supra;* and *Estate of Mary B. Hunnewell, supra.*

It is held that the respondent erred in including the trust corpus in the decedent's estate.

In view of the stipulation which the parties have made regarding deduction of sums paid as attorney fees and costs, recomputation of the estate tax is necessary under rule 50.

*Decision will be entered under Rule 50.*